[Cite as *Lumsden v. True N. Holdings, Inc.*, 2024-Ohio-5020.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

LORI LUMSDEN,

Plaintiff-Appellant,

v.

TRUE NORTH HOLDINGS, INC., ET AL.,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0119**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CV 00960

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gregg A. Rossi*, Rossi & Rossi Co., for Plaintiff-Appellant

*Atty. Craig G. Pelini* and *Atty. Samantha J. Volek*, Pelini, Campbell & Ricard, LLC, for
Defendant-Appellee

Dated: October 7, 2024

---

**WAITE, J.**

{¶1} Appellant Lori Lumsden appeals an October 26, 2023 judgment entry of the Mahoning County Court of Common Pleas granting summary judgment in favor of Appellee True North Holdings, Inc. Appellant argues that the trial court erroneously determined that a Gatorade sales display was an open and obvious hazard, precluding her from recovering in an action against the store owner following her trip and fall. For the reasons that follow, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Factual and Procedural History

{¶2} Appellee operates a gas station and convenience store located on Midlothian Boulevard in Youngstown, Ohio. Appellant is on disability for prior injuries she sustained and worked part-time at InstaCart, a business where patrons submit their grocery list and an InstaCart employee purchases those items and drops them off at the patron's residence. InstaCart employees choose when and how long they work by choosing to bid on certain deliveries. On February 19, 2021, Appellant visited Appellee's business to fuel her vehicle in anticipation of accepting InstaCart orders.

{¶3} A surveillance video captured the incident at issue. Just prior to Appellant's slip and fall, Appellant can be seen waiting in line behind another customer at a register. The video begins after Appellant entered the store and stood in place by a cash register. An entry door can be seen in the video, however, Appellant said she entered through another door. (8/31/23 Depo., p. 26.) A display case of Gatorade containers on a pallet can also be seen stacked against a wall topped by a counter on which Appellant leaned as she waited in line. If Appellant did not enter through the door visible in the video,

Appellant would clearly have walked past the Gatorade display to take her position at the counter.

{¶4} While Appellant waited, another cashier opened a new line and called for the next customer. Appellant can be seen on the video haphazardly rushing to the second cashier. In so doing, Appellant tripped over the display and fell to her knees. In her deposition, Appellant conceded that the store was well lit, nothing obstructed her view of the display, and had she simply looked down, she would have seen the display. (8/31/23 Depo., p. 26.)

{¶5} Appellant testified during her deposition that she did not immediately seek medical attention for her injuries, however, knee pain forced her to visit the emergency room later in the day. Initially, no significant injuries were detected. Appellant sought medical treatment from a specialist and learned that she had a hairline fracture, apparently in her knee, and a torn meniscus that required surgery.

{¶6} On June 6, 2022, Appellant filed a complaint against Appellee alleging negligence. On September 22, 2022, the trial court filed a judgment entry indicating that the case would be dismissed for failure to prosecute. Shortly thereafter Appellant obtained service on Appellee, who responded with an answer raising several defenses, including the open and obvious doctrine.

{¶7} On August 31, 2023, Appellee filed a motion for summary judgment and Appellant filed a motion in opposition. The evidence in support consisted of Appellant's deposition, the surveillance video of the incident, and an affidavit of a man who worked in retail opining that the display was placed too low to be visible to customers. On October

26, 2023, the trial court granted Appellee's motion for summary judgment, finding that the open and obvious doctrine barred Appellant's recovery. This timely appeal followed.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS, CONSIDERING THE EVIDENCE IN A LIGHT MOST FAVORABLE TO APPELLANT THE NON-MOVING PARTY, AND BASED UPON THE VIDEO OF THE INCIDENT AND APPELLANT'S EXPERT AFFIDAVIT, REASONABLE MINDS COULD REACH MORE THAN ONE CONCLUSION, THEREBY PRECLUDING SUMMARY JUDGMENT.

**{¶8}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist.1995).

**{¶9}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist.1997).

**{¶10}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

**{¶11}** "A negligence claim requires the plaintiff to prove: (1) duty; (2) breach of duty; (3) causation; and (4) damages." *Perry v. Anshu, LLC*, 2021-Ohio-2365, ¶ 10 (7th Dist.); citing *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84 (1996).

**{¶12}** When negligence is alleged in the context of premises liability, the applicable duty is defined by the relationship between the landowner and the plaintiff, who may be an invitee, licensee, or trespasser. *Milbert v. Wells Twp. Haunted House, Inc.*, 2016-Ohio-5643, ¶ 26 (7th Dist.), citing *Lang v. Holly Hill Motel, Inc.*, 2009-Ohio-2495, ¶ 10. The parties in this matter agree that Appellant was a business invitee. "A business

invitee enters upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Milbert* at ¶ 26, citing *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68 (1986).

**{¶13}** While the mere fact than an accident occurred does not give rise to a presumption of negligence, a business invitee is "owed a duty of ordinary care in maintaining the premises in a reasonably safe condition so they are not unnecessarily and unreasonably exposed to danger." *Milbert* at ¶ 28, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203-204 (1985). "[T]he obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm." *Perry v. Eastgreen Realty Co.*, 53 Ohio St.2d 51, 52 (1978).

**{¶14}** A business invitee can successfully assert a premises liability negligence claim in three ways: (1) where the defendant or an employee negligently created the hazard; (2) when the defendant or an employee had actual knowledge of the hazard and neglected to remove it promptly or give adequate warning of its presence; or (3) when the defendant or an employee had constructive knowledge of the hazard, such as where it existed for a sufficient length of time to reasonably justify an inference that the failure to correct the condition or warn against it was attributable to a lack of ordinary care. *Anaple v. Standard Oil Co.*, 162 Ohio St. 537, 541 (1955). Appellant claims Appellee or an employee negligently created the hazard in this case.

**{¶15}** An exception to a premises liability claim is the open and obvious doctrine. The open and obvious doctrine has long been Ohio law, and has been explained and defined many times. The theory behind the doctrine is that "the open and obvious nature

of the hazard itself serves as a warning, and that the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Barrett v. Ent. Rent-A-Car Co.*, 2004-Ohio-4646, ¶ 12 (10th Dist.), citing *Anderson v. Ruoff*, 100 Ohio App.3d 601, 604 (10th Dist. 1995). By definition, the foundation of the open and obvious doctrine is that the alleged hazard is "not hidden, concealed from view, or undiscoverable upon ordinary inspection." *Thompson v. Ohio State Univ. Physicians, Inc.,* 2011-Ohio-2270, ¶ 10. However, there is no "bright line" test to determine specifically what is encompassed by the doctrine. Instead, it has been developed through caselaw.

**{¶16}** Relevant to the instant matter, we have previously held that the open and obvious doctrine bars recovery where "the plaintiff admits that had he looked down he would have noticed the danger, [as] the danger is open and obvious." *Anshu* at ¶ 13. Similarly, the Third District has held that where a person "exercises the option" to turn their focus away from a hazard, that person has abandoned their duty to exercise reasonable care for their own safety and cannot overcome the open and obvious doctrine. *Carnes v. Siferd*, 2011-Ohio-4467, ¶ 26 (3rd Dist.).

**{¶17}** In a Tenth District case, the appellant tripped on a curb which was four inches high and painted with yellow stripes. *Barrett, supra.* The trial court ruled in favor of the business, finding the open and obvious doctrine precluded recovery. On appeal, the appellant argued that a person approaching the area would have to look down to see the curb, which was in close proximity to the entry door and would only be partially visible if a person were "inclined" to look down. *Id.* at ¶ 9. The *Barrett* court held that the open and obvious doctrine precluded recovery, as the appellant conceded that had she looked

down, she would have observed the hazard, which was neither hidden nor concealed from view.  *Id.* at ¶ 13.

**{¶18}**  In another case arising out of the Tenth District, Ms. Boroff walked through a store and tripped on the black skirting attached to the bottom of a display rack, causing her to fall.  *Boroff v. Meijer Stores Ltd. Partnership*, 2007-Ohio-1495 (10th Dist.)  The trial court determined that the open and obvious doctrine precluded recovery.  Although Ms. Boroff did not observe the hazard, she would have seen the skirting if she had simply looked down.  *Id.* at ¶ 11.  The *Boroff* court affirmed the trial court, explaining that "[r]egardless of whether the plaintiff actually noticed the dangerous condition until after falling, this court has usually found that no duty exists if the plaintiff should have been aware of the condition 'if he or she had looked.' "  *Id.* at ¶ 11-12.

**{¶19}**  Beginning with the question of whether the display at issue was open and obvious, Appellant testified in her deposition that she entered through a door that is not visible in the security footage.  The store setup is significant, here.  The only door pictured in the footage is depicted in the top left hand corner of the screen, just to the left of the counter where Appellant initially waited.  It is possible that, if she had entered through that door, she may not have readily seen the display.  However, she testified in a deposition the she entered through a door not visible on the video.  Necessarily, Appellant would have been forced to walk past the display to take her position in line if she had entered the store by any other means.

**{¶20}**  Further, the parties agree that the display, although placed on the floor, was quite large.  In fact, Appellant admitted that had she simply looked down she would have seen it.  She admitted as much multiple times during her deposition:

Case No. 23 MA 0119

Q. The container of Gatorade was on the floor, true?

A. Yes.

Q. It was out in the open, correct?

A. Yes.

* * *

Q. So it was on the floor, on the ground, and if you looked down, you could see it, correct?

A. If I had to look down, yes.

* * *

Q. And the reason that you made contact with it is because you did not look down, true?

A. Yes.

* * *

Q. There was nothing obstructing your vision between you and the Gatorade that was on the floor, true?

A. No.

* * *

Q. And if you had been looking down as you walked to check out, you would have been able to see it, right?

A. Yes. (Continuing objections omitted.)

(8/31/23 Depo., pp. 27-30.)

**{¶21}** It is apparent from the video that the display in question is visible from almost every angle inside the store. Even if this were not the case, the video is woefully insufficient evidence of the question at issue, since it does not depict Appellant and her actions prior to getting in line at the first cashier's counter. It does depict Appellant's position at the time as being within inches of both the end of the counter and the Gatorade display, located at the end of this counter. It is apparent from this video that the display, even at Appellant's vantage and even if she had entered by the door shown in the video, would be visible to her had she simply looked down, as she admitted.

**{¶22}** At one point, Appellant posits from the video evidence that because the display was placed low to the ground, it may have been "somewhat obscured" from Appellant's view. However, not only does Appellant's own statement show that this was not the case, in order to overcome the open and obvious doctrine, there must be actual evidence that the hazard was obscured from view. It is apparent that the display at issue was not obscured from the view of a reasonable person who was exercising ordinary care for their own safety.

**{¶23}** Appellant cites to several cases, including cases arising out of the Second District, *Bumgardner v. Wal-Mart Stores, Inc.,* 2002-Ohio-6856 (2d Dist.) and *Henry v. Dollar Gen. Store,* 2003-Ohio-206 (2d Dist.). However, in addressing these cases the

Second District cautioned that the holdings were heavily fact specific. *Johnson v. Southview Hosp.*, 2012-Ohio-4974, ¶ 14 (2d Dist.). While the *Johnson* court found there were genuine issues of material fact due to apparent obstruction of the hazard, the court acknowledged that not all situations will have identical results, depending on the circumstances and the evidence, including any admissions. *Id.* at ¶ 14. Here, we have a video showing the open and obvious nature of the display and admissions by Appellant that she would have seen the display if she had simply looked down. Additionally, she entered the building through a door which would have necessitated she walk directly past the display in order to reach the counter where she waited. Appellant conceded the display was not obstructed and the lighting in the building was adequate.

{¶24} Appellant also relies on *Klauss v. Glassman*, 2005-Ohio-1306, ¶ 19 (8th Dist.). However, the facts herein are readily distinguishable from those in *Klauss*. In *Klauss*, there was conflicting evidence offered as to whether a patron could have seen the hazard (a pallet), as it was obstructed on both sides by larger items that essentially hid it. *Id.* at ¶ 21. Appellant in this case conceded the Gatorade display was not hidden and she would have seen it had she looked down.

{¶25} Appellant also cites to *Ray v. Wal-Mart Stores, Inc.*, 2009-Ohio-4542 (4th Dist.). The *Ray* court explained that "[a]ttendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making." *Id.* at ¶ 31. The Fourth District recognized that "[m]any Ohio courts have held that objects and obstructions in store aisles are open and obvious hazards, regardless of whether a customer actually notices the hazard." *Id.* at ¶ 32. However, Ms. Ray denied that she would have seen the

Case No. 23 MA 0119

hazard if she had looked down, and other evidence offered in that case created a factual dispute as to whether the hazard was hidden. *Id.* at ¶ 41. Again, these facts are inapposite to the facts in the instant matter, where Appellant conceded the display was readily observable.

**{¶26}** Appellant also posits that her attention was distracted by an act of Appellee sufficient to excuse her failure to exercise ordinary care. She claims that because another clerk called her to a different check-out area, this "attendant circumstance" served to distract her from her duty to exercise care for her own safety. However, such a routine action on the part of the cashier does not warrant a reasonable person, exercising ordinary care, to haphazardly rush to another counter without making an effort to observe her surroundings. There was no emergency which caused Appellant's sudden rush, and it is quite clear from Appellant's own video evidence that Appellant did engage in a sudden rush. And while it is obvious the building was filled with sales displays, these would be expected in such an establishment, and also cannot be said to serve as a distraction absolving Appellant of her own duty to exercise ordinary care.

**{¶27}** "To serve as an exception to the open and obvious doctrine, an attendant circumstance must be 'so abnormal that it unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise.' " *Perry v. Anshu, LLC*, 2021-Ohio-2365, ¶ 21 (7th Dist.), citing *Mayle v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-2774, ¶ 20 (10th Dist.); *Cummin v. Image Mart, Inc.*, 2004-Ohio-2840, ¶ 10 (10th Dist.). "[A]ttendant circumstances are those that would distract a person's attention in the same situation and reduce the degree of care an ordinary person would exercise." *Guthrie v. Giant Eagle, Inc.*, 2021-Ohio-1268, ¶ 24 (7th Dist.), citing *Spence v.*

*Baird Bros. Saw Mill Inc.*, 2017-Ohio-8161, ¶ 14 (7th Dist.). "Attendant circumstances do not include regularly encountered, ordinary, or common circumstances." *Id.,* citing *Colville v. Meijer Stores Ltd.*, 2012-Ohio-2413, ¶ 30 (2d Dist.); *Cooper v. Meijer*, 2007-Ohio-6086, ¶ 17 (10th Dist.).

**{¶28}** There is nothing extraordinary or unusual about a cashier calling the next customer to a newly opened line. In fact, such a situation is quite normal. Appellant's urgency in switching to the new line was not justified under the circumstances. While placement of this display may have been, in hindsight, poor judgment on Appellee's part, it was open and obvious and would admittedly have been observed by Appellant had she looked down, thus precluding suit by Appellant. As such, Appellant's sole assignment of error is without merit and is overruled.

## Conclusion

**{¶29}** Appellant argues that the trial court erroneously determined that a Gatorade sales display was open and obvious so as to preclude her from recovering in a negligence action against the store owner following a trip and fall. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Hanni, J. dissents; see dissenting opinion.

Hanni, J., dissenting.

{¶30} With regard and respect to my colleagues, I must dissent from the majority opinion. I would find that genuine issues of material fact exist to preclude summary judgment in this case.

{¶31} Similar cases have found a genuine issue of material fact as to whether a condition was open and obvious.

{¶32} For instance, in *Bumgardner v. Wal-Mart Stores, Inc.*, 2002-Ohio-6856 (2d Dist.), the Second District found that a genuine issue of material fact existed to preclude summary judgment where the plaintiff tripped over a pallet of soft drinks. The court reasoned that: the pallet was located at the end of, but at the back side of, a row of shelves that were stocked with merchandise; a reasonable person could find that the pallet was located in an area where a customer would be expected to turn or change direction; and a reasonable person could differ in determining whether the position of the portion of the pallet not covered with cartons of soft drinks was obscured by the row of shelves to which it was adjacent. *Id.* at ¶ 26.

{¶33} In another Second District case, the court found reasonable minds could differ as to whether a cement block propping open a door was open and obvious. *See Henry v. Dollar Gen. Store*, 2003-Ohio-206 (2d Dist.). In *Henry*, the plaintiff turned a corner and exited through a door other than the one she had used to enter. In so doing, she tripped over a cement block that was being used to hold open the exit door. The right side of the doorway was partially blocked by a display of mops and brooms sticking out of a trash can and Henry was distracted by an eye-level merchandise display as she was exiting.

Case No. 23 MA 0119

**{¶34}** In *Klauss v. Glassman*, 2005-Ohio-1306 (8th Dist.), the Eighth District found a genuine issue of material fact existed as to the appearance of the condition causing the plaintiff to trip and fall based on attendant circumstances. The court relied on the facts that the store placed a pallet directly in the middle of a cross aisle and at the end of an open aisle on the other side and the view of the pallet was obscured by a bench on one side and a display of merchandise on the other. *Id*. at ¶ 21. The court also noted the plaintiff acknowledged that had he looked down he "possibly" would have been able to see the pallet. *Id*. ¶ 4.

**{¶35}** In another Eighth District case, the court found reasonable minds could differ as to whether a display platform was open and obvious, and whether the plaintiff knew of its danger, or may reasonably have been expected to discover it and protect against it, given that her view had been blocked by a movable display rack filled with merchandise, and her attention had been distracted by goods on display. *Carpenter v. Marc Glassman, Inc.*, 124 Ohio App.3d 236 (8th Dist. 1997).

**{¶36}** Finally, in *Ray v. Wal-Mart Stores, Inc.*, 2009-Ohio-4542 (4th Dist.), the Fourth District found that a genuine issue of material fact existed as to whether the crates that the plaintiff tripped over were hidden from view. The court noted that the crates were sticking out from underneath a produce display by less than one foot and the plaintiff stated that had she looked, she is not certain she would have seen them. *Id*. at ¶ 41.

**{¶37}** The present case has similarities to each of these cases. In this case, the Gatorade pallet was located on the floor at the end of a counter. The counter, and its displays, were located at waist-height or higher. The Gatorade pallet, however, sat on the ground and likely did not rise higher than a foot or two from the ground. Additionally,

the counter area was cluttered with other items. Depending on the angle a person was coming from, the pallet could be obscured from view until the last moment. Merchandiser Charles Williams opined the pallet was so low to the ground to create a tripping hazard. Thus, reasonable minds could differ as to whether the Gatorade pallet was open and obvious under these circumstances.

**{¶38}** Additionally, I would find a genuine issue of material fact exists as to whether attendant circumstances caused Appellant to become distracted. The clerks in the store were located in a "room" separated by waist-high counters topped with glass windows. The alleged attendant circumstances here were the clerk opening another register and calling for the next customer. This may be seen as a regular occurrence in stores.

**{¶39}** But the layout of the register area in this particular store was unique. For Appellant to move from the first register, where she was initially standing, and walk to the second register, where she was called by the clerk, required her to exit one area and enter another "room" that was separated by a doorway and the waist-high wall. In so doing, her path of travel likely led her right into the Gatorade pallet, which would have been at least partially obstructed by the wall/counter. A reasonable person called to come to the next open register could simply turn to the next register with their attention on the cashier's instruction. The fact that a low-lying pallet of drinks was on the ground in their path could be overlooked. Thus, reasonable minds could differ as to whether the cashier instructing Appellant to come to the next register constituted an attendant circumstance.

**{¶40}** For these reasons, I would reverse the summary judgment ruling and remand the matter for further proceedings.

Case No. 23 MA 0119

---

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**